FILED
United States Court of Appeals
Tenth Circuit

April 4, 2011

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

FRANCES M. FLOOD,

      Defendant-Appellant.

No. 10-4105

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. No. 2:07-CR-00485-DB-1)**

---

Ronald J. Yengich, (Elizabeth Hunt with him on the briefs), of Yengich, Rich &
Xaiz, Salt Lake City, Utah, for Defendant-Appellant.

D. Loren Washburn, Assistant United States Attorney, (Carlie Christensen, United
States Attorney, District of Utah, with him on the brief), Salt Lake City, Utah, for
Plaintiff-Appellee.

---

Before **BRISCOE,** Chief Judge, **TYMKOVICH** and **GORSUCH**, Circuit Judges.

---

**BRISCOE**, Chief Judge.

---

      Frances Flood was convicted by a jury in the United States District Court

for the District of Utah of making false or misleading statements to auditors,

securities fraud, perjury, and conspiracy to commit securities fraud. Flood filed post-trial motions in the district court asserting: (1) that her convictions for certain offenses were barred by the applicable statute of limitations; and (2) that she received ineffective assistance of counsel because her trial counsel labored under actual conflicts of interest. The district court denied these post-trial motions, and Flood appealed. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm the denial of Flood's post-trial motions and remand for the district court to vacate its ruling on the merits of Flood's ineffective assistance of counsel claim so that she may assert this claim in a collateral proceeding under 28 U.S.C. § 2255.

## I. BACKGROUND

Flood's convictions stem from her involvement in an alleged improper revenue recognition scheme at ClearOne Communications, Inc. (ClearOne). According to the government, ClearOne, a publicly traded company, engaged in a pattern of shipping product to its distributors at quarter and fiscal year ends in an effort to meet analysts' earnings projections. Because ClearOne allegedly gave its distributors verbal assurances that payment for these quarter and year-end transactions would not be due until the product was subsequently sold to dealers or end users, ClearOne's recognition of revenue on these shipments was improper. During this alleged scheme, Flood served as ClearOne's Chief Executive Officer. However, prior to the initiation of her criminal proceedings, Flood resigned from

2

her employment with ClearOne pursuant to an employment separation agreement, wherein ClearOne agreed to "indemnify Flood for any liability and for all reasonable attorneys' fees and costs incurred by her" in any proceedings that related to this alleged scheme. Aplt. App. at 119–20.

Before the grand jury returned an indictment against Flood for her involvement in this alleged scheme, she executed the Statute of Limitations Tolling and Extension Agreement (S/L Agreement) with the United States Attorney's Office for the District of Utah. Id. at 293–95. In the S/L Agreement, Flood agreed that "she w[ould] not argue that any federal criminal charges [arising out of her activities in connection with ClearOne] . . . [were] barred by a statute of limitations which expired any time during the period of June 25, 2007 through July 26, 2007" and that "[t]he period of limitations [applicable to any and all potential federal criminal charges arising out of Flood's activities in connection with ClearOne] that would otherwise expire from June 25, 2007 through July 26, 2007, is tolled and is extended until July 26, 2007." Id. at 293. The United States Attorney's Office agreed to "afford . . . Flood an opportunity for a pre-charging conference to be held." Id. Further, in the S/L Agreement, Flood asserted that she entered into the agreement "freely and voluntarily" and that she agreed to "waiv[e] the protections of the statue [sic] of limitations . . . after full and careful thought, with the advice of counsel, and with a full understanding of . . . [her] rights." Id. at 294.

3

On July 25, 2007, the grand jury returned an indictment charging Flood with making false statements to auditors, securities fraud, and conspiracy to commit securities fraud.  Id. at 303–11.  Specifically, in Counts IV and V of this initial indictment, the grand jury charged that Flood engaged in securities fraud "[o]n or about June 29, 2002", in violation of 15 U.S.C. § 78j(b), 17 C.F.R. § 240.10b-5, 15 U.S.C. § 78ff, and 18 U.S.C. §§ 2(a) and (b).  Aplt. App. at 310–11.  The grand jury returned a superseding indictment in November 2007 with identical securities fraud charges appearing in Counts V and VI, id. at 313–22, and a second superseding indictment in January 2008 with identical securities fraud charges appearing in Counts V and VI, id. at 324–37.

The second superseding indictment charged Flood with: (1) conspiracy to commit securities fraud in Count I; (2) making false statements to auditors in connection with an audit, review and examination of financial statements in Counts II through IV; (3) securities fraud in Counts V and VI; and (4) perjury in Counts IX through XI.  Id.  Flood and Susie Strohm, who had served as ClearOne's Chief Financial Officer, were tried as co-defendants in a jury trial.  Id. at 1–26.  The jury found Flood guilty on all counts on February 27, 2009, id. at 13, and she was sentenced to 48 months' incarceration, id. at 364–66.

After Flood was adjudged guilty, she retained substitute counsel.  Id. at 14.  Through her substitute counsel, Flood filed two post-trial motions.  First, on November 19, 2009, Flood filed a motion to dismiss Counts I through VI of the

4

second superseding indictment, alleging that the applicable statute of limitations barred the prosecution of these offenses. Id. at 280–89. While acknowledging the existence of the S/L Agreement, Flood argued that any purported waiver in the agreement was defective because it did not occur in open court and did not specifically identify the rights waived. Id. Second, on January 26, 2010, Flood filed a motion to vacate all of her convictions, asserting that she received ineffective assistance of counsel during the criminal proceedings because her trial counsel labored under actual conflicts of interest. Id. at 43–63. Specifically, she contended that the arrangement for ClearOne to pay her legal fees created conflicts of interest for her trial counsel and that these conflicts adversely affected her representation. Id.

The government opposed Flood's motions. With regard to the motion to dismiss based on the statute of limitations, the government argued that the S/L Agreement constituted a valid waiver of the statute of limitations. Id. at 298–300. As to the motion to vacate based on the ineffective assistance of counsel, the government argued that the motion was untimely, construing the motion as a filing pursuant to Federal Rule of Criminal Procedure 33, asserting that the motion was not filed within the requisite seven days[1], and contending that this

_____

[1] The government applied the version of the rule in effect when Flood filed her post-trial motions, which provided that: "[a]ny motion for a new trial grounded on any reason other than newly discovered evidence must be filed within 7 days after the verdict or finding of guilty." Fed. R. Crim. P. 33(b)(2)

(continued...)

5

time limitation could not be extended pursuant to Federal Rule of Criminal Procedure 45 for excusable neglect.  Id. at 167–78.  In the alternative, the government argued that Flood failed to establish that her trial counsel labored under actual conflicts of interest.  Id.

The district court denied Flood's motions.  Id. at 349.  As to the motion to dismiss based on the statute of limitations, the district court concluded that the S/L Agreement constituted a valid waiver of the applicable statute of limitations.  Id. at 353.  With regard to the motion to vacate due to the ineffective assistance of Flood's counsel, the district court made two alternative rulings.  The district court concluded that Flood's motion was untimely because the motion was not filed within the requisite seven days and the delay was not due to excusable neglect.  Id. at 358–60.  In the alternative, the district court concluded that Flood's trial counsel "did not labor under a conflict of interest" and that "Flood's representation was in no way compromised."  Id. at 362.  Flood appealed the district court's decision denying both of these motions.

## II. DISCUSSION

On appeal, Flood argues that the district court erred in denying her motion to dismiss Counts V and VI of the second superseding indictment based on the

---

[1](...continued)
(emphasis added).  However, the current version of the rule provides that a motion for new trial "grounded on any reason other than newly discovered evidence must be filed within 14 days after the verdict or finding of guilty."  Fed. R. Crim. P. 33(b)(2) (2009) (emphasis added).

6

applicable statute of limitations and in denying her motion to vacate her convictions based on the ineffective assistance of her trial counsel. We affirm the district court's denial of Flood's motion to dismiss based on the applicable statute of limitations. As regards her ineffective assistance of counsel claim, we affirm the district court's ultimate decision to deny her motion to vacate, but not for the reasons stated by the district court. We remand for the district court to vacate its ruling on the merits of her ineffective assistance of counsel claim so that Flood may assert this claim in a collateral proceeding under 28 U.S.C. § 2255.

### 1. *Waiver of the statute of limitations.*

This court has held that defendants can expressly waive the bar to prosecution established by the statute of limitations. United States v. Cooper, 956 F.2d 960, 961–62 (10th Cir. 1992). We review de novo the question of whether a defendant's express waiver of the statute of limitations is enforceable. See United States v. Leyva-Matos, 618 F.3d 1213, 1217 (10th Cir. 2010) (reviewing de novo "the question whether a defendant's waiver of his appellate rights in a plea agreement is enforceable"); see also Cooper, 956 F.2d at 961–63 (applying the de novo standard of review to assess whether defendant's guilty plea waived the statute of limitations).

Flood's convictions on Counts V and VI of the second superseding indictment for securities fraud are based on conduct that occurred "[o]n or about June 29, 2002." Aplt. App. at 332. The applicable statute of limitations required

7

the government to file the relevant charging documents within five years after the commission of these offenses. 18 U.S.C. § 3282(a). As the initial indictment charging Flood with these offenses was filed on July 25, 2007, after the applicable limitations period had run, Flood contends that the statute of limitations bars her prosecution for these offenses.

However, pursuant to the S/L Agreement Flood executed, the initial indictment filed on July 25, 2007 was within the extended period of limitations. Specifically, the S/L Agreement provided that "[t]he period of limitations [applicable to any and all potential federal criminal charges arising out of Flood's activities in connection with ClearOne] that would otherwise expire from June 25, 2007 through July 26, 2007, is tolled and is extended until July 26, 2007." Aplt. App. at 293. While Flood concedes that she executed the S/L Agreement and that the S/L Agreement purported to waive the statute of limitations until July 26, 2007, she argues that this waiver was defective. To validly waive the statute of limitations, Flood asserts that the waiver must occur in "open court" and must specifically identify the rights waived. We reject these arguments and conclude that the S/L Agreement constituted a valid waiver of the statute of limitations.

This court has noted that an express waiver of the statute of limitations most likely occurs "when the defendant perceives waiver will work to . . . her advantage." Cooper, 956 F.2d at 962. "In effect, the defendant's waiver of the statute of limitations, in proper circumstances, is a binding agreement not to

8

object to the filing of charges beyond the period of limitations." Id. In the S/L

Agreement, Flood agreed "that she w[ould] not argue that any federal criminal

charges . . . are barred by a statute of limitations which expired any time during

the period of June 25, 2007 through July 26, 2007," and the government agreed to

afford Flood the opportunity for a pre-charging conference. Aplt. App. at 293.

The S/L Agreement also stated that Flood entered the agreement "freely and

voluntarily," "after full and careful thought, with the advice of counsel, and with

a full understanding of . . . [her] rights." Id. at 294. Thus, Flood entered into a

valid agreement waiving the applicable statute of limitations.

We decline to impose an "open court" requirement on the waiver of the

statute of limitations. When recognizing that a defendant can expressly waive the

bar on prosecution established by the statute of limitations, this court cited to

decisions in other circuits involving express waivers. See Cooper, 956 F.2d at

961 (citing United States v. Meeker, 701 F.2d 685, 687 (7th Cir. 1983), and

United States v. Wild, 551 F.2d 418, 424–25 (D.C. Cir. 1977)). Both Meeker and

Wild involved written waivers of the applicable statutes of limitations without

any mention of the waivers occurring in open court. See Wild, 551 F.2d at 420

(concluding that defendant validly waived the statute of limitations by executing

both a written waiver the defendant's attorney prepared, which was then delivered

to law enforcement, and another waiver prepared by law enforcement); Meeker,

701 F.2d at 686 & n.2 (concluding that short-term, government drafted waivers of

9

the statute of limitations that all targets of the grand jury investigation executed independently after consultation with legal counsel constituted valid waivers).

Flood's primary argument for imposing an "open court" requirement on a waiver of the applicable statute of limitations is flawed. Flood improperly equates the waiver of the statute of limitations to the waiver of an indictment, asserting that a waiver of the statute of limitations necessarily waives the defendant's right to a timely indictment. As a result, Flood mistakenly argues that Federal Rule of Criminal Procedure 7(b), which requires that a defendant waive prosecution by indictment "in open court and after being advised of the nature of the charge and of the defendant's rights," applies in the context of waivers of statutes of limitations. As the government notes, Federal Rule of Criminal Procedure 7(b) permits the government to prosecute an individual for an offense without obtaining a grand jury indictment when the defendant waives the right to prosecution by indictment. This rule is inapplicable in Flood's case because the government did prosecute Flood pursuant to a grand jury indictment. Therefore, the issue of whether prosecution by indictment was properly waived is not presented in this case.

We similarly reject Flood's argument that the waiver in the S/L Agreement was defective because it failed to identify the specific constitutional rights she waived. First, we note that the written waiver agreement in Wild did not identify any specific constitutional rights waived. See 551 F.2d at 420 n.3. Second,

Flood's argument proceeds from the mistaken premise that the waiver of the statute of limitations involves, or is interrelated with, the waiver of a constitutional right. As a result, Flood improperly incorporates the legal framework for the waiver of fundamental constitutional rights, arguing that waiver of the statute of limitations requires proof of the "'intentional [ . . . ] abandonment of a known right or privilege.'" Aplt. Br. at 54 (alteration added) (quoting Johnson v. Zerbst, 304 U.S. 458, 464 (1938)). However, the limitations period in this case is imposed by federal statute, rather than by the Constitution. See Wild, 551 F.2d at 424–25 (distinguishing the waiver of a constitutional right from the waiver of a statutory right such as the statute of limitations). Further, the statute of limitations is an affirmative defense that can be waived if it is not asserted at trial. United States v. Gallup, 812 F.2d 1271, 1280 (10th Cir. 1987). In contrast, constitutional rights cannot be so waived.

### 2. Ineffective assistance of counsel.

The district court rendered two alternative rulings concerning Flood's ineffective assistance of counsel claim raised in her motion to vacate: (1) that the motion was untimely; and (2) that Flood's trial counsel had not labored under an actual conflict of interest and that, even if a conflict existed, her representation was not adversely impacted. We affirm the district court's denial of the motion to vacate her convictions, but not for the reasons stated by the district court. Rather, we conclude the district court should not have considered the merits of Flood's

11

ineffective assistance of counsel claim given the lack of development of the record. Further, because its ruling could adversely impact her ability to assert this claim in a 28 U.S.C. § 2255 petition, we remand for the district court to vacate its ruling on the merits of this claim.

Assuming, without deciding, that Flood had timely filed her motion to vacate based on the ineffective assistance of her trial counsel, this claim is not appropriate for resolution by either the district court, or this court on direct appeal, due to the insufficiency of the record. Except in rare circumstances, "[i]neffective assistance of counsel claims should be brought in collateral proceedings, not on direct appeal." United States v. Galloway, 56 F.3d 1239, 1240 (10th Cir. 1995) (en banc). When ineffective assistance of counsel claims are pursued on direct appeal, they "are presumptively dismissible, and virtually all will be dismissed." Id. This rule is based on the following rationale:

> A factual record must be developed in and addressed by the district court in the first instance for effective review. Even if evidence is not necessary, at the very least counsel accused of deficient performance can explain their reasoning and actions, and the district court can render its opinion on the merits of the claim.

Id.

Nonetheless, this court has considered ineffective assistance of counsel claims on direct appeal in limited circumstances, but only where the issue was raised before and ruled upon by the district court and a sufficient factual record exists. See United States v. Rodriguez-Rivera, 518 F.3d 1208, 1216 (10th Cir.

12

2008) (considering an ineffective assistance of counsel claim on direct appeal because the issue was raised before and ruled upon by the district court and the record had been sufficiently developed by the district court at the time of the ruling); United States v. Hamilton, 510 F.3d 1209, 1213 (10th Cir. 2007) (reviewing an ineffective assistance claim on direct appeal where the district court developed an extensive record on the issue and ruled on the issue).

Because the record has not been sufficiently developed to determine whether Flood's trial counsel labored under actual conflicts of interest, we conclude that Flood's ineffective assistance of counsel claim does not fit within this narrow exception. Thus, the district court properly denied Flood's motion to vacate her convictions which raised her ineffective assistance of counsel claim. We affirm because the district court should not have reached the issue, and not because the district court correctly ruled on the merits of the claim. We remand to the district court to vacate its ruling on the merits of the ineffective assistance of counsel claim.

### III. CONCLUSION

We affirm the district court's denial of Flood's post-trial motions and remand for the district court to vacate its ruling on the merits of Flood's ineffective assistance of counsel claim.

13